Good morning, Your Honors. May it please the Court, Michael DiNardo, Pro of Kelly, Lowery & Kelly, on behalf of the Defendants' Appellants, East Coast Foods and Herbert Hudson. I'd like to reserve five minutes for rebuttal. Just keep an eye on the clock. Yes, Your Honor. Defendants presented a number of grounds for reversal in this appeal, and I'd just like to address a few of those here before the Court. And primarily, the main argument that we have is that plaintiffs in this instance asserted a claim of copyright infringement based upon the alleged public performance of certain songs. And their position during the entirety of the district court proceeding was that they were not required to prove substantial similarity of the accused performances to the copyrighted works. And it's the defendant's position that substantial similarity is a necessary element there in order to prove that the public performance was of the copyrighted works. Even if you're correct, why wasn't that shown? I mean, your client presented no evidence. Your clients presented no evidence. And the facts are that the investigator, Mr. Green, testified that he heard the music. Quite a few of the performances were mentioned by title by the artist, the performer who was performing them. And John Coltrane was mentioned throughout as the person who had recorded these songs. And in addition, on the CD, the titles were given. So in the absence of any other evidence, why isn't that sufficient, even under your argument that the plaintiff had to prove substantial similarity? Well, because, Your Honor, plaintiffs were of the position that substantial similarity was irrelevant. So we submit that they did not present any evidence on substantial similarity. What about all that I've said? I mean, the testimony of the investigator, he heard it. He gave firsthand testimony that he heard these songs and what they were. They were mentioned by title, at least some of them, and he identified them. And why isn't that enough in the absence, again, of any contrary evidence? Well, Your Honor, similarity in title is not substantial similarity. There are plenty of songs that share the same title. No, no, no. I don't mean that. But he listened to them. He identified this music. I understand, Your Honor, but in making that identification, the investigator did not make any of the determinations about the constituent elements of the song that we could examine his conclusion on. Was he asked about any of that? We did, and plaintiffs specifically objected to those questions as being irrelevant. They did not, and the witness did not prepare any of the analysis that would ordinarily go into preparing the substantial similarity analysis. Didn't analyze any of the constituent elements. What case do you have that supports the notion that substantial similarity must be established when the right that's claimed at stake is public performance? Well, Your Honor, the Ninth Circuit itself in Newton v. Diamond said that the substantiality requirement applies throughout the law of copyright, and each one of the rights of copyright that a copyright owner has under 17 U.S.C. 106 refer to the copyrighted work. We produce the copyrighted work, prepare derivative works based on the copyrighted work, distribute the copyrighted work, and perform publicly the copyrighted work, the one at issue here. And we submit that if it is not substantially similar... So you don't dispute that these were performed publicly? Well, Your Honor, that's another position that we have. At the time the investigation was performed, it was performed two years before the complaint was filed, so defendants had no knowledge and no opportunity to gather their own evidence on what was performed that night. So the only thing that we have, and I submit that over two years the actual performer of the songs, Mr. Azar Lawrence and his band, had no knowledge of what he performed on a particular night two years ago versus any of the other intervening performances. So whether or not those songs were performed... You don't have any evidence to rebut the investigators? We don't have any evidence to rebut that a public performance occurred, but we contest that plaintiffs met their burden to establish that those performances were of the copyrighted works. By the court adopting the investigator's conclusion that those public performances were of the copyrighted works, the court... So what would you have them show? Well, we asked... The lyrics, the same lyrics or the same music? Preferably both, Your Honor. We asked the investigator if he prepared anything besides a list of song titles, and he said no. He didn't have a recording, he didn't have a video, he didn't have any sheet music, he didn't have anything that he made other than his list of song titles that appears in the record. And the... But these were represented to be the copyrighted material. I mean, is there any question about that? I understand you don't have any contrary evidence, but that's what the testimony was. These were represented by the performer in your client's establishment as copyrighted material. I mean, he didn't say these are copyrighted, but he said these are the titles, these are the songs performed by John Coltrane, and that's not enough? In other words, even if that happens, you've got to show more? Well, Your Honor, according to the investigator, Mr. Lawrence did not identify every song that he was performing, and the investigator could not identify which of the songs the performer did identify by title in his deposition. He said quite a few were mentioned from the record. But he couldn't identify whether it was any of these that were asserted. And in fact, at the time the investigator identified these songs, he was not aware of the plaintiff's copyrights. He was only aware of the public performances, and that's the popular recordings by Mr. Coltrane. And for the mechanical recordings, he was not even aware of the performer of those mechanical recordings. And we submit that the investigator was comparing those public performances to the popular recordings and not to the copyrighted works, and the copyrighted works were not of Mr. Coltrane's popular performances. Mr. Coltrane, plaintiffs submit that Mr. Coltrane's popular recordings were of the copyrighted works, but there was no comparison of those either. Well, is your argument that unless there's a recording, a video, or audio recording of a copyrighted song, that infringement action is simply not sufficient? Well, ideally there would be a recording that the trier of fact could review and analyze, or an expert witness could analyze and provide that opinion to the court. The investigator here was not an expert witness. Well, that's not exactly what Judge Jones, I don't think that really responds directly to Judge Jones's question. He required, is the plaintiff required to produce that evidence? Not whether it would be ideal. I think they're required to produce some evidence of substantial similarity. And as I stand here today, I'm not saying that a recording is the only way they could do that. I'm saying that a recording would be an ideal way that they could do that. And, excuse me, Your Honor. We submit that because the plaintiffs are not required to meet their burden of substantial similarity that they're required to meet in every other case of copyright infringement, that this unfairly shifts the burden of proof to the defendants. All the plaintiffs need to do under their theory is say these song titles were performed here and they don't need to submit any other proof. And because, as in this instance, the complaint that asserts the claim of copyright infringement was brought two years after the accused public performances, the defendants are extremely prejudiced by their ability to gather any evidence to address those public performances. As an example, where you have an investigator providing testimony such as this, I see two main ways to attack that investigator's testimony. One would be to challenge that the public performance occurred at all, that the songs he identified were performed on that night. And as I said, because the defendant in this case didn't find out about the accused public performances until two years after the fact when the complaint was filed, they don't have the ability to get that evidence as to what songs were performed on that night. The witnesses, the people that were there, their memories are unreliable at that point. So you're actually using substantial similarity to buttress your argument that they needed to prove that they actually performed the songs in question. To prove that the performances were of the copyrighted works. Right. And without imposing that requirement on the plaintiffs, which is imposed on the plaintiffs. You're not using a substantial similarity in the notion when you're comparing two similar works, a copyrighted work versus another, a copyrighted movie script versus another work that is similar to the copyrighted work and you have to look at the elements and determine whether it's substantially similar, the infringing one. That's not your argument. Yes, Your Honor. That's your argument? Yes. Okay. You want to save the rest of your time for rebuttal? I do, Your Honor. All right. Thank you. Good morning, Your Honors. My name is Richard Reamer and with me is Vic Sohal from the Miller firm. I think Your Honor has grasped the problem with the substantial similarity issue as it's been posed by my adversary. And quite frankly, I find it astounding that the other side has ignored this circuit's distinction between substantial similarity and other rights involved in 106-4. I'm speaking, of course, of the Copyright Act, which provides a series of exclusive rights to copyright owners, including rights of reproduction and distribution and public performance. And as this Court pointed out in A&M Records against Napster, in this instance, the right of public performance is the substitute for substantial similarity and copying. That is not what the plaintiffs have to prove. The infringer has to be shown to have intended to perform these copyrighted material. Yes. Certainly, Your Honor, intent to perform or actual performance is the crux of the case. What we have is 70 years.  Not whether or not it was copyrighted, but represented it to be the material in question, the infringed material. Ultimately, to prove it, these songs were actually infringed. And as I started to say, what we have is 70 years or so, and more, almost 100 years of ASCAP conducting these investigations on behalf of its members. An investigator goes into an establishment, sits there for two or three hours, and simply writes down the songs that he can identify as a lay person. I think many of us have taken music lessons when we were in school. Many of us have record or tape or CD collections, so we can identify popular music. And three of the songs here are among the most popular recorded. My Favorite Things by Richard Rodgers. All or Nothing at All. And this investigator was in the bar, sat there, identified the songs. Four of the compositions, remember, were played by a disc jockey. He had the CD. The investigator saw the CD, saw the case that the CD is stored in, saw the titles listed. What more could anyone have to prove? Now, we're criticized because we cited cases from other districts. Well, fact of the matter is this precise issue of whether you have to prove substantial similarity has not come before the Ninth Circuit, nor to my recollection has it come before a district court. It has in other districts. And what the district courts said, as Judge Paez pointed out, this is not a plagiarism case. One doesn't have to go through the intrinsic-extrinsic analysis to prove that the copyrights were infringed. And the bottom line for my argument on this point is where this court started. There was absolutely no proof on the other side as to performance. Certainly, the disc jockey could have been found. Certainly, these musicians could have come forward and said, we didn't play it, but they couldn't because they didn't remember. Well, finally, at the end, it struck me, what he's using substantial similarity for is a substitute to establish performance. Exactly, Your Honor. And that's not, I don't think that's right. Performance stands on its own. I mean, it could. I mean, it could. Somebody, I guess you could have somebody testify, yes, I heard. But let me make... I'm familiar with John Coltrane, and yeah, that was his... But let me make this point, Your Honor. The very essence of jazz is rearranging an existing work. You start with a melody that's familiar to everyone, and you improvise. That is still an infringement, as the cases hold. I just wanted to come back for one moment to A&M versus Napster because we cited this in our brief, and in particular, this language. Plaintiffs must satisfy two requirements to present a private-facing case of direct infringement. They must show ownership of the alleged infringing material, and they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. 106. Then a citation from another of this Court's cases, S.O.S. Inc. versus Payday, and he quotes the word, quote, copying, close quote, is shorthand for the infringing of any of the copyright owner's five exclusive rights. And we found another performance case, and I regret that we didn't put it in our brief, but with the Court's indulgence, can I give the citation, Janki, J-A-N-K-Y, versus Lake County Convention and Visitors Bureau, 576 F. 3rd, 356, Seventh Circuit decision, a song was infringed. Before you leave, just write that on a piece of paper. I shall, Your Honor. With the clerk and give it to counsel. I shall, Your Honor. And the very brief citation, again the same language from A&M and Napster, a plaintiff alleging copyright infringement must establish two elements, ownership of a valid copyright and copying of constituent elements of the work that are original, citing the Supreme Court, Vice Publications versus Royal Telephone Service. Janki's satisfaction of the second element is in little dispute. An individual, quote, copies, close quote, another work for purposes of copyright law if he plays it publicly or distributes copies without the copywriter's owner's authorization. And the final point on this aspect of the case, Your Honor, Newton v. Diamond cited by my adversary was a case involving a sound recording. We are not dealing here with sound recording copyrights. Titles, similarity, that's not the issue. Again, the issue is public performance. I'd like to spend a few moments on one of the other principal issues in the case, the liability issue of the two defendants. What we have here is an individual who owns five restaurants known as Roscoe's. A month or so ago, President Obama visited Roscoe's in Los Angeles. Well, on the night of May 30, 2008, an ASCAP investigator visited the Long Beach Roscoe's. The Long Beach Roscoe's has been operated since 2001 by these defendants, East Coast Foods. Much has been made in the briefing about the liquor license. The liquor license and its application is where the district judge started in your finding of liability as to these defendants. And I say that because the liquor license included not only a license for beverages, but if you look back at the record in this case, and it's cited in our brief, there was a permit issued that specified live entertainment, live music, and dancing. So from the get-go, the intent was to operate Roscoe's by East Coast Foods for the purpose of presenting live entertainment, music. And we know that as well because in his diagram, the individual who is the sole director and president, Mr. Hudson, the individual defendant, diagrammed the facility and chose the bar lounge as part of the entire facility. Much, again, has been made of another entity, so-called Shoreline. Well, did Mr. Hudson testify that he was in control of both corporations? Yes, indeed, Your Honor. So even if Shoreline Foods was a proper corporation, he would be liable still? Exactly so. Exactly so. And in fact, Shoreline didn't come into existence. based on the supplemental permit that they've put in the record until a year after these infringements occurred. So you have that. You have the testimony throughout the depositions that there were individuals employed by East Coast Foods who managed the entire facility, who bought the liquor that was served in the bar lounge area where the music was performed. All of these things together point to one entity, East Coast Foods. As to Mr. Hudson himself, we've held him individually liable, as the district court found, because he certainly has the right and ability to control what goes on there. In his phrase, he regulates the business. And those who he employs report directly to him. If there are financial issues, they take them up with him. Management issues, they take them up with him. Again, coming back to the corporate structure, we've heard from the other side that Mr. Hudson, quote, loaned out the liquor license at one point to Shoreline. First, there's no provision for that under California statutes. Second, there was no evidence of any loan or any other business arrangement. Not one shred of paper produced by the other side. So I think if the issue becomes whether or not the district court properly assessed the facts, there isn't any question that this record is substantial enough to sustain a finding of individual liability. Anything else? Well, I just wanted to mention very briefly that the other issue on appeal is the attorney's fees. I think it's very clear that the district court took into account this court's holding in the, I believe it's Entertainment Group versus Genesis Group decision. Applied, in this case, all of those factors to reach what was, I think, a terribly sound decision. Somebody makes a decision to operate a business. After all, remember, ASCAP tried for years to license this place. They ignored us. Finally, the lawsuit is brought. You pay your money and you take your chances. Just out of curiosity, how much does it cost to license these? It would have cost, I believe, Your Honor, something about $1,500 a year. Far, far less than all of this litigation. And regrettably, although offers were made before the litigation was filed to attempt to settle it, a deaf ear was turned. Okay. Thank you. Thank you. I think there's some time for rebuttal. Thank you, Your Honors. And I'd just like to address briefly the position of my opposition regarding the substantial similarity requirement again. It's not our position that substantial similarity supplants the public performance requirement. What we are saying is that if there is an accused public performance and that public performance is not substantially similar to the copyrighted work, then that public performance was not of the copyrighted work. And as an example, if I were to stand here and say I'm going to now perform all or nothing at all, not that I would subject the court to that, and then started singing an entirely different song, that wouldn't be an infringement of the plaintiff's copyright even though I represented it as all or nothing at all. And regarding the … You're just disputing whether or not, in fact, it was performed. That's all. I'm disputing – I'm not disputing that a performance occurred. I'm disputing that that performance was of the plaintiff's copyrighted work. Right. And regarding the reference to this Court's Napster opinion, that was clear that the substantiality requirement goes through all of copyright. And there's no reason to accept public performance from that requirement. Okay. And if the Court doesn't have any more questions, I'll submit. Okay. Thank you. Thank you, counsel. We appreciate your arguments. Would you hand it to – just confer with the clerk, please. Range Road Music, Inc. v. East Coast Foods is submitted at this time, and we'll turn to our next case. Lawrence v. Turner's Outdoorsmen Corporation.
judges: Jones, Pregerson, Paez